| | | |
|---|---|---|
| DANNY MONZÓN RIVERA<br><br>Apelante<br><br>v.<br><br>GFR MEDIA, LLC<br><br>Apelado | KLAN202300863 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Civil núm.: CA2021CV00592 (407)<br><br>Sobre: Despido Injustificado; Procedimiento Sumario |

Panel integrado por su presidenta la jueza Ortiz Flores, el juez Rivera Torres y la jueza Rivera Pérez.

**Rivera Torres, Juez Ponente**

**SENTENCIA**

En San Juan, Puerto Rico, a 14 de noviembre de 2023.

Comparece ante este tribunal apelativo el Sr. Danny Monzón Rivera (el señor Monzón Rivera o el apelante) mediante el recurso de *Apelación* de epígrafe solicitándonos que revoquemos la *Sentencia* dictada por el Tribunal de Primera Instancia, Sala Superior de Carolina (el TPI), el 12 de septiembre de 2023, notificada el día siguiente. Mediante este dictamen, el foro primario declaró *Ha Lugar* a la moción de sentencia sumaria instada por GFR Media, LLC (GFR o la apelada) y en su consecuencia, desestimó con perjuicio la querella incoada en su contra.

Por los fundamentos que expondremos a continuación, revocamos la *Sentencia* apelada.

**I.**

El 8 de marzo de 2021, el señor Monzón Rivera incoó una querella sobre despido injustificado al amparo del procedimiento sumario dispuesto en la Ley núm. 2 de 17 de octubre de 1962, según enmendada. En la misma, alegó que fue contratado por GFR el 3 de

enero de 2006, ocupaba el puesto de Especialista de Apoyo Aplicaciones desde agosto de 2010, fue despedido el 20 de agosto de 2020 por una supuesta reorganización empresarial, y al momento del despido devengaba un salario de $40,000 anuales. Adujo, además, que la empresa recibió asistencia federal del *Payment Protection Plan* (PPP, siglas en inglés) por lo que se benefició con millones de dólares para retener empleos. Indicó que no se despidió al Sr. Rafael Algarín, quien lleva menos tiempo trabajando por lo que no respetó el principio de antigüedad. Sobre este particular añadió que el señor Algarín laboraba en el mismo grupo que él, realizando las mismas funciones y que poco antes del despido lo movieron de la clase con otro título, pero haciendo las mismas funciones que podría realizar el señor Monzón Rivera.

Por tanto, adujo que fue despedido injustificadamente por lo que solicitó que se le indemnizara, a tenor de las disposiciones y remedios establecidos en la Ley núm. 80 de 30 de mayo de 1976, según enmendada, 29 LPRA sec. 185a, *et seq.* (Ley núm. 80-1976), aplicable a los hechos.

GFR contestó la querella oportunamente negando la mayoría de las alegaciones. Entre las defensas afirmativas esbozó que, debido a la pandemia del COVID-19, hubo una pérdida de ingresos y el cambio a trabajo remoto provocó consecuencias al servicio en el Departamento de Tecnología. Ello conllevó que se realizara una reorganización y la plaza que ocupaba el señor Monzón Rivera fuese eliminada ,lo que constituyó justa causa para el despido a tenor de la Ley núm. 80-1976, *supra*.

Ahora bien, el 30 de agosto de 2021, GFR presentó una *Moción de Sentencia Sumaria* reiterando que el despido del apelante surgió como parte de una reorganización *bona fide* de la empresa. Argumentó que la pandemia afectó las operaciones de la compañía y las restricciones impuestas por el Gobierno de Puerto Rico tuvieron

impactos drásticos en la circulación de los dos periódicos, El Nuevo Día y Primera Hora. Lo cual, al reducir sustancialmente las operaciones, creó una pérdida de ingresos por lo que se vio forzada a tomar medidas de reducción de costos, incluyendo la fuerza laboral. Agregó que el puesto del apelante, Especialista de Apoyo de Aplicaciones, era único en GFR y fue eliminado como parte de la reorganización. Puntualizó que las funciones del apelante no eran realizadas por el señor Algarín, ya que este se desempeñaba en una plaza distinta con diferentes funciones.

En virtud de lo anterior, la apelada detalló cuarenta y siete (47) determinaciones de hechos no incontrovertidos.[1] Como apoyo a estas, incluyó los siguientes documentos: extractos de la deposición del apelante, la Descripción del Puesto, *Especialista de Apoyo Aplicaciones*, y la Declaración Jurada suscrita por la Sra. María Soledad López Latoni, *Human Resources Business Partner*.

El 15 de febrero de 2022, el señor Monzón Rivera presentó oportuna oposición al petitorio desestimatorio sumario. En este escrito aceptó los hechos enumerados 1, 2, 3, 4, 8, 9, 10, 11, 12 y 46 en el pedido de GFR y propuso veintiseis (26) adicionales que, a su entender, no están en controversia.[2] Además, estableció que la controversia a dilucidar era si procede la reclamación laboral por despido injustificado a tenor de la Ley núm. 80-1976, *supra*. Entre los anejos incluidos con la moción están: Declaración Jurada suscrita por el apelante; Tabla de *Small Business Administration* (SBA, siglas en inglés); Talonarios de pago; Carta de GFR del 15 de abril de 2020; Deposición del apelante; y Descripción del Puesto, Especialista de Apoyo Aplicaciones.

El 8 de marzo de 2022, GFR instó una réplica a la referida oposición en donde expuso que el señor Monzón Rivera no

---

[1] Véase el Apéndice del Recurso, a las págs. 10-14.
[2] *Íd.*, a las págs. 55-58. El hecho núm. 26 fue incorrectamente numerado 18.

controvirtió los hechos materiales que sustentan que el despido no fue una determinación arbitraria o caprichosa. Respecto a los hechos adicionales, incluidos por el apelante en su escrito, GFR argumentó que el señor Monzón Rivera, como Especialista de Apoyo de Aplicaciones, "carece del conocimiento personal del recibo por parte de GFR de fondos del programa federal *Paycheck Protection Program ...*, ya que sus responsabilidades en la empresa no se relacionan con este particular..."[3] Por su parte, planteó que el apelante plasmó hechos inmateriales e impertinentes, más incluyó prueba inadmisible al no haber sido debidamente autenticada.

Así pues, evaluados los mencionados escritos, el 13 de septiembre de 2023 el TPI dictó la *Sentencia* impugnada. En esta, el foro primario declaró *Ha Lugar* a la moción de sentencia sumaria instada por GFR y en su consecuencia, desestimó con perjuicio la querella incoada en su contra. Asimismo, el foro apelado expresó:[4]

> Examinada la Moción de Sentencia Sumaria presentada por la parte querellada GFR Media, LLC, la Oposición presentada por la parte querellante el 15 de febrero de 2022, el escrito de Réplica presentado por la parte querellada el 8 de marzo de 2022, así como la prueba documental sometida, y el expediente en su totalidad, este Tribunal determina que no existen hechos esenciales y pertinentes en controversia, por lo que se desestima la Querella presentada contra GFR Media, LLC, por los fundamentos aducidos por la parte querellada en su Moción de Sentencia Sumaria y Réplica.
>
> De conformidad con la Regla 42.2 de Procedimiento Civil, 32 LPRA Ap. V., R. 42.2 de Procedimiento Civil, se dicta esta Sentencia sin determinaciones de hecho ni de derecho.

Inconforme con el dictamen, el apelante acude ante este foro intermedio imputándole al tribunal *a quo* haber incurrido en los siguientes errores:

> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR LA QUERELLA INDICANDO QUE NO EXISTE CONTROVERSIA SUSTANCIAL DE HECHOS.
>
> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL ADMITIR COMO EVIDENCIA HECHOS DEBIDAMENTE

---

[3] Véase el Apéndice del Recurso, a la pág. 185.
[4] *Íd.*, a las págs. 198-199.

OBJETADOS Y AL NO INFERIR QUE LA [PRUEBA] VOLUNTARIAMENTE SUPRIMIDA LE ERA ADVERSA.

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL OMITIR EN SU ANÁLISIS LAS DETERMINACIONES DE HECHOS ADICIONALES.

El 27 de septiembre de 2023, emitimos una *Resolución* concediendo el término de treinta (30) días a la parte apelada para expresarse. El 25 de octubre siguiente, se cumplió con lo ordenado por lo que nos damos por cumplidos y a su vez, decretamos perfeccionado el recurso.

Destacamos que en su alegato GFR incluyó una solicitud de desestimación por alegado incumplimiento con nuestro reglamento. Examinada la misma la declaramos *No Ha Lugar*. Nuestro Tribunal Supremo ha resuelto en diversas ocasiones que los reglamentos para perfeccionar los recursos ante foros apelativos deben observarse rigurosamente.[5] A su vez, se ha establecido que estos pueden ser aplicados de manera flexible en situaciones muy particulares, como la de autos, donde está plenamente justificado, por tratarse de un mero requisito de forma de menor importancia.[6] Sobre este punto, advertimos que a pesar de las omisiones señaladas en cuanto a los índices y la brevísima relación de hechos procesales, los documentos incluidos en el recurso de apelación son los mismos que se anejaron en el alegato en oposición. Además, el escrito apelativo nos permite ejercer cabalmente nuestra función revisora y los documentos incluidos nos permiten una evaluación completa.

Analizados los escritos de las partes y el expediente apelativo; así como estudiado el derecho aplicable, procedemos a resolver.

---

[5] Véase, *M-Care Compounding et al. v. Depto. Salud*, 186 DPR 159 (2012) y *Pueblo v. Rivera Toro*, 173 DPR 137 (2008), entre otra casuística.
[6] Véase, *Arriaga v. F.S.E.*, 145 DPR 122, 130 (1998) y casos allí citados.

**II.**

**Mecanismo de Sentencia Sumaria**

La sentencia sumaria es un mecanismo procesal mediante el cual se confiere al juzgador discreción para dictar sentencia sin necesidad de celebrar vista evidenciaria. *Ramos Pérez v. Univisión,* 178 DPR 200 (2010); *Nissen Holland v. Genthaller,* 172 DPR 503, 511 (2007). En el ejercicio de tal discreción el tribunal examinará los documentos admisibles en evidencia que se acompañan con la solicitud y los documentos que se encuentran en el expediente del tribunal. *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414 (2013); *Cruz Marcano v. Sánchez Tarazona,* 172 DPR 526, 550 (2007). Una vez el tribunal determine que no existe una controversia genuina de hechos que tenga que ser dirimida en vista evidenciaria y que lo único que falta es aplicar el derecho, procederá a dictar la sentencia sumaria. *Audiovisual Lang. v. Sist. Est. Natal Hnos.*, 144 DPR 563, 575 (1997).

Este mecanismo contribuye en aligerar la tramitación de los casos, permitiendo que se dicte sentencia sin necesidad de celebrar una vista evidenciaria, cuando de los documentos no controvertidos que se acompañan con la solicitud y de la totalidad de los autos, surge que no existe controversia sobre los hechos materiales, por lo cual solo corresponde aplicar el derecho. *SLG Zapata-Rivera v. J.F. Montalvo,* supra; *Medina v. M. S. & D. Química P.R. Inc.*, 135 DPR 716, 726 (1994); *Cuadrado Lugo v. Santiago Rodríguez,* 126 DPR 272, 279 (1990). Este mecanismo discrecional aligerará la tramitación de un caso, pues el tribunal solo tendría que aplicar el derecho. *Oriental Bank v. Perapi et al.*, 192 DPR 7, 25 (2014); *Ramos Pérez v. Univisión,* supra, a las págs. 213-214.

Los hechos materiales son los que pueden afectar el resultado de una reclamación bajo el derecho sustantivo aplicable. La controversia sobre el hecho material debe ser real y de una calidad

suficiente como para que sea necesario que un juez la dirima a través de un juicio plenario. *Ramos Pérez v. Univisión*, supra, a la pág. 213. El principio rector que debe guiar al juez de instancia en la determinación sobre si procede o no la sentencia sumaria es "el sabio discernimiento", porque si se utiliza de manera inadecuada, puede prestarse para privar a un litigante de su día en corte, lo que sería una violación a su debido proceso de ley. *Mun. de Añasco v. ASES et al.*, 188 DPR 307, 327-328 (2013).

La Regla 36 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 36, establece de manera específica los requisitos de forma que debe cumplir la parte que promueve la moción de sentencia sumaria; así como la que se opone a ella. En lo pertinente, el promovente debe exponer un listado de hechos no controvertidos, desglosándolos en párrafos debidamente numerados y, para cada uno de ellos, especificar la página o el párrafo de la declaración jurada u otra prueba admisible que lo apoya. A su vez, la parte que se opone a la moción de sentencia sumaria está obligada a citar específicamente los párrafos según enumerados por el promovente que entiende están en controversia y, para cada uno de los que pretende controvertir, detallar la evidencia admisible que sostiene su impugnación con cita a la página o sección pertinente. *Meléndez González, et al. v. M. Cuebas*, 193 DPR 100, 111 (2015). De este modo, se facilita el proceso adjudicativo, ya que posiciona al juzgador de evaluar conjuntamente las versiones encontradas para cada uno de los hechos refutados a la luz de las referencias a la prueba. "Este sistema claramente agiliza la labor de los jueces de instancia y propende la disposición expedita de aquellas disputas que no necesitan de un juicio para su adjudicación." *SLG Zapata Rivera, v. J.F. Montalvo*, supra, a la pág. 434.

Al considerar una moción de sentencia sumaria, si el promovido no controvierte los hechos que presente la parte

promovente, los mismos se tendrán por ciertos. *Díaz Rivera v. Srio. de Hacienda*, 168 DPR 1, 27 (2006). Así, nuestra alta *curia* ha aclarado que "a menos que las alegaciones contenidas en la moción de sentencia sumaria queden debidamente controvertidas, estas podrían ser admitidas y, de proceder en derecho su reclamo, podría dictarse sentencia sumaria a favor de quien promueve". *Meléndez González, et al. v. M. Cuebas*, supra, a la pág. 137. Sin embargo, "toda inferencia razonable que se realice a base de los hechos y documentos presentados, en apoyo y en oposición a la solicitud de que se dicte sentencia sumariamente, debe tomarse desde el punto de vista más favorable al que se opone a la misma". *ELA v. Cole*, 164 DPR 608, 626 (2005).

Ahora bien, se han establecido ciertas reglas limitantes de la discreción en el uso de la moción de sentencia sumaria. Por un lado, la determinación en cuanto a esta debe <u>guiarse por un principio de liberalidad a favor de la parte que se opone</u>, lo cual persigue evitar la privación del derecho de todo litigante a su día en corte cuando existen controversias de hechos legítimas y sustanciales que deben ser resueltas. *Ramos Pérez v. Univisión*, 178 DPR 200, 216-217 (2010). Por el otro, como norma general, los tribunales están impedidos de dictar sentencia sumaria en cuatro instancias: (1) cuando existan hechos materiales y esenciales controvertidos; (2) cuando hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) cuando de los propios documentos que acompañan la moción surge que existe una controversia sobre algún hecho material y esencial; o (4) cuando como cuestión de Derecho no procede. *Oriental Bank v. Perapi, et al.,* 192 DPR 7, 26-27 (2014). Dicho esto, cabe indicar que la moción de sentencia sumaria no está excluida en ningún tipo de pleito, puesto que, sin importar cuán complejo sea un pleito, puede dictarse si de una moción de sentencia sumaria bien fundamentada surge que no hay controversia sobre

hechos materiales. *Meléndez González et al. v. M. Cuebas, supra,* a la pág. 112.

En lo relativo al ejercicio de la facultad revisora de este Tribunal de Apelaciones sobre la procedencia de la sentencia sumaria, **debemos utilizar los mismos criterios que el Tribunal de Primera Instancia**. *Íd.*, a la pág. 115. En *Meléndez González et al. v. M. Cuebas,* supra, el Tribunal Supremo atemperó este estándar a las exigencias de las nuevas Reglas de Procedimiento Civil y a lo que ya había establecido hace una década en *Vera v. Dr. Bravo,* 161 DPR 308, 334-335 (2004). Así las cosas, consignó el siguiente estándar:

> "Primero, reafirmamos lo que establecimos en *Vera v. Dr. Bravo, supra,* a saber: el Tribunal de Apelaciones se encuentra en la misma posición del Tribunal de Primera Instancia al momento de revisar Solicitudes de Sentencia Sumaria. En ese sentido, está regido por la Regla 36 de Procedimiento Civil, *supra,* y aplicará los mismos criterios que esa regla y la jurisprudencia le exigen al foro primario. Obviamente, el foro apelativo intermedio estará limitado en cuanto a que no puede tomar en consideración evidencia que las partes no presentaron ante el Tribunal de Primera Instancia **y tampoco adjudicar los hechos materiales en controversia, ya que ello le compete al foro primario luego de celebrado un juicio en su fondo**. La revisión del Tribunal de Apelaciones es de *novo* y debe examinar el expediente de la manera más favorable hacia la parte que se opuso a la Moción de Sentencia Sumaria en el foro primario, llevando a cabo todas las inferencias permisibles a su favor.
>
> Segundo, por estar en la misma posición que el foro primario, el Tribunal de Apelaciones debe revisar que tanto la Moción de Sentencia Sumaria como su Oposición **cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civi**l, supra, y discutidos en *SLG Zapata-Rivera v. J.F. Montalvo*, supra.
>
> Tercero, **en el caso de revisión de una Sentencia dictada sumariamente**, el Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia. De haberlos, el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos. Esta determinación se puede hacer en la Sentencia que disponga del caso y puede hacer referencia al listado numerado de hechos incontrovertidos que emitió el foro primario en su Sentencia.

> Cuarto, y por último, de encontrar que los hechos materiales realmente están incontrovertidos, el foro apelativo intermedio procederá entonces a revisar de *novo* si el Tribunal de Primera Instancia **aplicó correctamente el Derecho a la controversia**." (Énfasis nuestro). *Meléndez González et al. v. M. Cuebas*, supra, a las págs. 118-119.

**Ley sobre despidos injustificados**

Ante el interés apremiante del Estado en regular las relaciones obrero-patronales y evitar las prácticas injustas del trabajo, la Asamblea Legislativa aprobó la *Ley sobre Despido Injustificado*, Ley núm. 80-1976, posteriormente enmendada. *Díaz v. Wyndham Hotel Corp.,* 155 DPR 364, 374 (2001). En el ejercicio de regular las acciones relacionadas con el despido de un empleado, la Ley núm. 80-1976 y sus subsiguientes enmiendas, tienen el propósito de proteger al empleado de actuaciones arbitrarias del patrono e imponer remedios económicos para desalentar la práctica de despedir a los empleados injustificadamente. *Romero et als. v. Cabrera Roig et als.,* 191 DPR 643, 649-650 (2014).[7]

Asimismo, el Artículo 1 de la Ley núm. 80-1976, 29 LPRA sec. 185a, establece que los empleados de un comercio, industria o negocio que están contratados sin tiempo determinado, que reciben remuneración y son despedidos de su cargo sin que medie justa causa tienen derecho al pago de una compensación, conocida como la mesada. Por lo tanto, lejos de prohibir el despido de forma absoluta, se le impone al patrono un elemento disuasivo para no despedir al trabajador sin justa causa. *Romero et als. v. Cabrera Roig et als., supra,* a la pág. 651. Así, un patrono puede despedir a un empleado sin causa alguna y solo estará sujeto al pago de la mesada, pero, para evitarlo, debe demostrar la existencia de una justa causa para la destitución. *Íd.*

---

[7] La Ley núm. 4-2017 conocida como la *Ley de Transformación y Flexibilidad Laboral*, 29 LPRA sec. 121, *et seq.*, enmendó varios articulados de la Ley Núm. 80-1076. El Artículo 1.2 de esta ley, 29 LPRA sec. 121a, dispone que "[l]os empleados contratados con anterioridad a la vigencia de esta Ley, continuarán disfrutando los mismos derechos y beneficios que tenían previamente, según lo dispuesto expresamente en las secciones de ésta."

El Artículo 2 del estatuto, 29 LPRA sec. 185b, tipifica varias causales como justa causa para el despido de un empleado. Como es sabido, la enumeración de estos escenarios no es taxativa. *SLG Torres-Matundan v. Centro Patología*, 193 DPR 920, 930 (2015). El referido precepto dispone lo siguiente:

> Se entenderá por justa causa para el despido de un empleado o empleada de un establecimiento:
>
> (a) Que el empleado o empleada siga en un patrón de conducta impropia o desordenada.
> (b) La actitud del empleado o la empleada de no rendir su trabajo en forma eficiente o de hacerlo tardía y negligentemente o en violación de las normas de calidad del producto que se produce o maneja por el establecimiento.
> (c) Violación reiterada por el empleado o empleada de las reglas y reglamentos razonables establecidos para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado o empleada.
> (d) Cierre total, temporero o parcial de las operaciones del establecimiento.
> (e) Los cambios tecnológicos o de **reorganización, o la naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público**.
> (f) **Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido**. [Énfasis nuestro]

Así pues, vemos de las antes transcritas instancias que hay ocasiones en las que se permite que un patrono despida empleados, sin tener que pagar la mesada, cuando el despido responde a una reorganización empresarial. *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 426 (2013). Por tanto, "[u]n patrono puede modificar su forma de hacer negocios a través de algún tipo de cambio dirigido a optimizar sus recursos y aumentar las ganancias, ya sea eliminando plazas, creando otras nuevas o fusionando algunas que ya existentes, como vehículo para enfrentar problemas financieros de competitividad, siempre que responda a una restructuración *bona fide*." *Íd*. Es decir, que la restructuración sea de buena fe.[8]

---

[8] Véase, Guillermo Cabanellas, *Diccionario enciclopédico de Derecho Usual*, 23 ed. rev., Editorial Heliasta, 1994, Tomo I, a la pág. 510.

No obstante, esta disposición no pretende que toda merma en ventas o ganancias se traduzca en justa causa para un despido. "Por el contrario, esta aplicará únicamente a aquellas situaciones en las cuales la aludida disminución sea una sustancial **al punto que atente contra la continuidad de la empresa**." *Íd*. [Énfasis nuestro]. Además, para poder justificar el despido bajo cualquiera de las modalidades que la Ley núm. 80 permite, **el patrono debe presentar evidencia acreditativa del plan de reorganización implantado, así como su utilidad, y/o de la alegada disminución en la producción, ventas o ganancias**. *Íd*., a la pág. 427.

Por otro lado, en cuanto al despido de un empleado los cambios tecnológicos, de reorganización, estilo, diseño o naturaleza del producto, y en los servicios rendidos al público, el Profesor Charles Zeno Santiago señala que:[9]

> …
>
> [...] Estos cambios pueden conllevar el despido de empleados en algunas ocasiones y el reclutamiento en otras. Pero, a diferencia de los casos de cierre parcial o temporero, en las cuales la antigüedad es el criterio principal que determina el orden y la forma en que debe realizarse el despido de empleados, las situaciones que envuelven uno o varios de los cambios antes expresados **presentan la eficiencia o capacidad como el requisito principal**.
>
> Los cambios tecnológicos, de reorganización, estilo, diseño, naturaleza del producto, y en los servicios rendidos al público, comúnmente conllevan cambios en las funciones del empleo, en la forma en que se realiza el trabajo, y en el nivel de educación, experiencia, destrezas y capacidad que se exige del empleado. <u>En algunos casos surgen nuevas clasificaciones ocupacionales y en otros una consolidación de éstas.</u> En ocasiones, el empleado que antes se encontraba capacitado para desempeñar las funciones de un empleo pudiera no estarlo posteriormente. A estos efectos, **los conocimientos y destrezas que antes resultaban indispensables para ocupar un empleo podrían luego ser innecesarios**.
>
> A modo de ejemplo, el nivel de educación, conocimiento, experiencia o destrezas que inicialmente no formaban parte de los requisitos del empleo podrían posteriormente pasar a serlo. La Ley no prohíbe cambios dirigidos a modernizar las operaciones de una empresa o negocio. [Énfasis nuestro]

---

[9] Véase, C. Zeno Santiago y V. M. Bermúdez Pérez, *Tratado de derecho del trabajo*, 1.ª ed., San Juan, PR, Publicaciones JTS, 2003, T. I, pág. 106.

Ahora bien, "[a]l determinar los empleados que se encuentran capacitados para ejercer las funciones de un puesto, **el patrono no disfruta de libertad absoluta para hacer la selección** de forma arbitraria y caprichosa. Cada caso debe analizarse de forma individual y a tenor con los hechos particulares del mismo. Cuando hay empleados que resultan estar **igualmente capacitados** para desempeñarse en una plaza, cuyas funciones y requisitos han sufrido cambios, **la antigüedad rige el orden retención**. No observar el orden de antigüedad en esta última situación conlleva un despido injustificado." [Énfasis nuestro]. A. Acevedo Colom, *Legislación protectora del trabajo comentada*, 8.ª ed. rev., San Juan, PR, 2005, a la pág. 160.

Puntualizamos, que el Artículo 2 de la Ley núm. 80-1976, claramente establece que no se considerará despido por justa causa aquel que se hace por mero capricho del patrono o sin razón **relacionada con el buen y normal funcionamiento del establecimiento**. *SLG Zapata-Rivera v. J.F. Montalvo, supra,* a la pág. 427. Por ello, los patronos tienen el peso de la prueba de demostrar que el despido de un trabajador o una trabajadora fue por justa causa. *Báez García v. Cooper Labs., Inc.,* 120 DPR 145, 152 (1987).

### III.

El apelante planteó, en esencia, que erró el TPI al haber desestimado la querella por entender que existen hechos en controversia, y por haber considerado prueba que fue objetada y erróneamente admitida. A su vez, expuso que el foro apelado falló al no considerar los hechos adicionales propuestos en su escrito de oposición, lo cual le hubiese permitido determinar que el despido fue injustificado.

De entrada, destacamos que las partes cumplieron sustancialmente con los requisitos de forma dispuestos en la Regla

36 de las de Procedimiento Civil, *supra*. Por ende, procedemos a revisar si en realidad existen hechos materiales en controversia. De haberlos, y conforme a la directriz del alto foro, debemos cumplir con la exigencia de la Regla 36.4 de las de Procedimiento Civil y exponer concretamente cuáles hechos materiales encontramos que están en controversia, así como los incontrovertidos.

Examinados los escritos de las partes y la prueba acompañada surge que efectivamente los siguientes hechos no están en controversia:[10]

1. El Sr. Monzón Rivera comenzó a trabajar para GFR el 3 de enero de 2006.
2. Este se desempeñaba como Especialista de Apoyo de Aplicaciones al 20 de agosto de 2020.
3. Las responsabilidades de dicha plaza incluían: evaluar equipo y recomendar la compra de estos, instalar, relocalizar y disponer de equipos tecnológicos (software y hardware); mantener actualizado el inventario de activos tecnológicos de la empresa y proveer informes de ellos para la toma de decisiones; brindar adiestramientos a los usuarios del sistema de la empresa; servir de apoyo en la solución de problemas; realizar evaluaciones de productos; administrar e implementar servicios y tecnologías asignadas; y proveer asistencia a usuarios y realizar reparaciones de equipo.
4. Antes de su despido, el Sr. Monzón Rivera realizaba tareas de programación para desarrollar reportes y de administración de los servidores relacionados con el sistema de desarrollo de los periódicos.
5. Además de las aplicaciones relacionadas con el periódico, el Sr. Monzón Rivera brindaba apoyo a las aplicaciones de compra y del Departamento de Finanzas.
6. El trabajo con las aplicaciones consistía, esencialmente, en brindar apoyo a los usuarios que tuvieran algún problema, así como administrar cuentas.
7. El trabajo con las aplicaciones era alrededor del ochenta por ciento (80%) de las labores del Sr. Monzón Rivera para agosto de 2020.
8. El restante veinte por ciento (20%) de las funciones del Sr. Monzón Rivera para agosto de 2020 giraban en torno a la verificación de cuentas de dominio y el trabajo con los equipos físicos.
9. Desde el 12 de marzo de 2020 al 20 de agosto siguiente, la entonces Gobernadora Wanda Vázquez Garced emitió una serie de ordenes ejecutivas como consecuencia del estado de emergencia declarado por la Pandemia del Covid-19.[11]

---

[10] Véase Relación de Hechos Incontrovertidos, 1,2,3,4, 8, 9, 10, 11, 26, 32, 36, 37, 46 y 47, de la *Moción de Sentencia Sumaria*, Apéndice del Recurso a las págs. 010-016.

[11] Véase Relación de Hechos Incontrovertidos, del 12 al 25, de la *Moción de Sentencia Sumaria*, Apéndice del Recurso, a las págs. 012 a 014.

10. GFR opera dos (2) periódicos impresos y digitales en Puerto Rico, a saber: El Nuevo Día y Primera Hora.
11. Como consecuencia de la pandemia del COVID-19 y de las medidas impuestas, GFR implantó el trabajo remoto.
12. La situación de la pandemia del COVID-19 hizo necesario que GFR redujera costos operacionales, incluyendo servicios externos, costas de agua y luz ("utilities"), rentas, mercadeo, salarios y beneficios.
13. Los meses de los cierres obligaron a GFR a enfocarse en las versiones digitales de los periódicos y a reducir la fuerza laboral.
14. En la reorganización realizada en julio y agosto de 2020 se eliminaron docenas de plazas.[12]
15. El 20 de agosto de 2020 el Sr. Monzón Rivera fue despedido.
16. El Sr. Carlos Stella, supervisor del Sr. Monzón Rivera, asumió las funciones que este realizaba.

Conforme al derecho precedente, los patronos tienen el peso de la prueba de demostrar que el despido de un trabajador o una trabajadora fue por justa causa. Si bien, la Ley núm. 80-1976, *supra*, enumera como una de las razones que pueden ser consideradas como justa causa, la reorganización corporativa, el patrono está en la obligación de **presentar evidencia acreditativa de la veracidad de dicho plan, su reorganización, así como su implantación.** En específico, resulta necesario que el patrono establezca un nexo causal entre la razón aducida y el despido del empleado.

En virtud de lo antedicho, en el presente caso, GFR aduce varios motivos para el despido del apelante los cuales desglosamos a continuación:

a. Una disminución sustancial en la venta de las versiones impresas de los periódicos El Nuevo Día y Primera Hora como consecuencia de la Pandemia. Los cuales alegadamente representaban su mayor fuente de ingresos.
b. Cambio en las necesidades de los servicios en las facilidades de la empresa como consecuencia de la implantación del trabajo remoto.
c. El enfoque en las versiones digitales.
d. La plaza del apelante era la única y el resto del personal del Departamento de Sistema de Información tenían plazas distintas.

---

[12] Véase Relación de Hechos Incontrovertidos, 38 y 39 de la *Moción de Sentencia Sumaria*, Apéndice del Recurso, a la pág. 016.

Como precisamos, no toda merma en ventas o ganancias se traduce en justa causa para un despido. Dicha causa aplica a situaciones en las cuales esa "disminución" sea una sustancial, al punto que atente contra la continuidad de la empresa. Además, en los despidos de empleados, por cambios en la naturaleza del producto y en los servicios rendidos al público, se requiere la evaluación de la eficiencia o capacidad como el orden y la forma en que debe realizarse. Por otro lado, en los casos de cierre parcial o temporero, la antigüedad es el criterio principal.

En el presente caso, la alegada reducción en ventas fue expresada sin más en la Declaración Jurada suscrita por la Sra. María Soledad López Latoni, quien ocupa el cargo de *Human Resources Business Partner* en GFR. En dicho documento, la señora López Latoni afirmó tener conocimiento personal sobre la reorganización que la compañía realizó en agosto de 2020 ante los efectos de la pandemia del COVID-19. Sin embargo, de su lectura no surge ni un dato numérico que pueda especificar claramente cuál fue el efecto, si alguno, en términos económicos, que arroje información certera sobre el impacto en los ingresos de las ventas de los dos (2) periódicos impresos durante la pandemia del COVID-19. Aunque esta afirma que, "[l]os ingresos de las versiones impresas de los periódicos entre los meses de marzo a agosto de 2020 tuvieron las siguientes diferencias en comparación con el mismo periódico en 2019: marzo 38%, abril 67%, mayo 62%, junio 57%, julio 43%, y agosto 51%", **no se precisaron cantidades que pudieran reflejar la gravedad del impacto económico en GFR como empresa**. Más aún, esta información resulta ser esencial, ya que la señora López Latoni indicó que la alegada reducción en ventas provocó una reorganización que representó *docenas de despidos.* Esto, sin especificar las áreas o departamentos afectados ni qué criterios se usaron para los despidos.

A su vez, conforme al comunicado del 15 de abril de 2020, firmado por la Sra. Diana Vivoni, *Senior HR Business Partner*, se tomó, como medida para proveer *alivio financiero a la empresa*, la reducción de salario de los empleados desde el 20 de abril hasta el 10 de julio de 2020.[13] De igual forma, desconocemos cuál fue el efecto económico que tuvo en las operaciones dicha merma. De otra parte, precisa advertir que, respecto a la alegación de que GFR participó del *Paycheck Protection Program* (PPP) bajo la Ley Federal de Ayuda, Alivio y Seguridad Económica de Coronavirus, conocida por sus siglas en inglés como *CARES Act.,* le corresponde al foro apelado determinar si procede tomar conocimiento judicial al palio de las Reglas 201 y 202 de las Reglas de Evidencia. Además, de haberse recibido dicha ayuda federal, el TPI deberá cerciorarse de cuál fue el impacto en la retención de la empleomanía o en el pago de los salarios.

Por su parte, la señora López Latoni apuntaló, en su Declaración Jurada que, durante los cierres implantados por el Gobierno de Puerto Rico, a causa de la pandemia, GFR tuvo que enfocarse en las versiones digitales, pero no establece cuál fue el resultado económico que ello significó, ya sean pérdidas o ganancias. Tampoco abundó en cómo esta nueva visión de la empresa hacía más o menos viable la alegada reorganización, y cómo se afectarían los distintos puestos en GFR.

A base de lo anterior, se hace imprescindible advertir que surge de las propias palabras de la señora López Latoni que sus funciones, entre otras, incluyen atender asuntos de recursos humanos y establecer e implantar políticas de la empresa. No obstante, **esta nunca aseveró que conocía personalmente en detalle y podía declarar sobre la situación financiera de GFR**.

---

[13] *Íd.*, a la pág. 93.

Tampoco surge de la Declaración Jurada qué procedimientos se utilizaron ni el orden que se consideró para determinar los despidos en la empresa. **Es decir, no existe ni un ápice de información que arroje luz respecto a cuáles áreas de trabajo o departamentos de la GFR se impactaron con la alegada reorganización ni la metodología en la implementación, y su utilidad conforme a la nueva visión de GFR.**

De otro lado, en el caso específico del apelante, existen serias controversias en cuanto al criterio considerado por GFR para el despido, es decir, **si fue el de eficiencia o capacidad, o el de la antigüedad**. El meramente afirmar que la plaza fue eliminada, sin más, no es suficiente para justiciar su despido. Sobre este punto, recordemos que la señora López Latoni meramente mencionó que con la implementación del trabajo remoto se cambiaron las necesidades de los servicios en las instalaciones de la empresa. Esto, sin detallar en qué consisten estos cambios. Por lo que, ante la implementación de dicha modificación laboral, GFR determinó que podía continuar sus operaciones sin la plaza de *Especialista de Apoyo de Aplicaciones* y que dichas **funciones podían ser fusionadas** por el Sr. Carlos Stella, Supervisor del señor Monzón Rivera. Una vez más subrayamos que dicha aseveración carece de información diáfana que permita concluir que la aludida reorganización fue una *bona fide,* o si el despido del apelante fue por meramente como resultado directo de haber implementado el trabajo remoto. Esto último, sin demostrar qué elementos precisos se tomaron en cuenta para tal determinación, como previamente expusimos.

Destacamos, además, que no existe evidencia de cómo la alegada reorganización impactó el *Departamento de Sistema de Información* al cual estaba adscrito el apelante, y si este estaba o no capacitado para desempeñarse en dicha división o si podía ejercer

otras tareas de puestos vacantes u ocupadas por empleados de menor antigüedad que realicen tareas similares. Recalcamos que al no haberse presentado un organigrama del *Departamento de Sistema de Información*, de cómo estaba estructurado antes y después de la susodicha reorganización, esto se desconoce. Sobre este punto, el apelante en su deposición indicó que aunque él y el Supervisor se encargaban de los servidores de las aplicaciones del "print" de los periódicos habían más servidores administrados por otros empleados.[14] A su vez, este señaló que en su área de trabajo estaba segregada por lo que habían grupos que realizaban ciertas tareas.[15] Por tanto, le corresponde al TPI determinar que, aunque apelante ocupaba la única plaza de Especialista de Apoyo de Aplicaciones, no está claro si existen más puestos con funciones similares y ante la ausencia de un organigrama, como mencionamos, se hace imposible concluir si en el *Departamento de Sistema de Información* el apelante podía ejercer otras tareas de puestos vacantes u ocupadas por empleados de menor antigüedad que realicen tareas similares. Recordemos que al determinar los empleados que se encuentran capacitados para ejercer las funciones de un puesto, **el patrono no disfruta de libertad absoluta para hacer la selección de forma arbitraria y caprichosa**. Cada caso debe analizarse de forma individual y a tenor con los hechos particulares del mismo. Cuando hay empleados que resultan estar **igualmente capacitados** para desempeñarse en una plaza cuyas funciones y requisitos han sufrido cambios, **la antigüedad rige el orden retención**. A. Acevedo Colom, *Legislación protectora del trabajo comentada, supra.*

Agregamos a lo antedicho, que el señor Monzón Rivera afirmó en la deposición que a raíz de la pandemia los servicios físicos que

---

[14] Véase el Apéndice del *Alegato de la Apelada*, a la pág. 140.
[15] *Íd.*, a las págs. 140-143.

él realizaba en la empresa no se estaban realizando, **pero todas las demás tareas sí, a través del trabajo remoto**.[16] Mencionó, además, que desde marzo de 2020 hasta el despido laboró desde la casa y no volvió a estar de manera presencial en la empresa.[17] Al respecto, desconocemos si la alegada reorganización fue la que provocó que este se convirtiera en el nuevo modo de ejercer las labores de él y de los demás empleados del *Departamento de Sistema de Información*.

En virtud de lo anterior, resulta forzoso concluir que la apelada falló en su deber de presentar prueba suficiente para demostrar cómo fue desarrollada e implantada la supuesta reorganización *bona fide* y su utilidad posterior a ser establecido el trabajo remoto. Menos aún, se evidenció la situación económica específica de GFR y cómo cualquier aludida disminución en las ventas de los periódicos atentó contra la continuidad de sus operaciones. **Así pues, vemos que en el presente caso todos los motivos aludidos por GFR, y detallados previamente, para justificar el despido del apelante están en controversia**. **Asimismo, recalcamos que al GFR haber fallado en presentar toda la información pertinente relativa a la reorganización, impide tener un marco completo sobre el desarrollo, la implementación y la utilidad de esta**. **Asimismo, esta carencia de datos imposibilita entender los elementos que justificaron la determinación del despido**. Precisa acentuar que, dada la naturaleza reparadora que la Ley núm. 80-1976, *supra*, sus disposiciones deben ser interpretadas liberalmente a favor del trabajador. Por tanto, y acorde con el derecho aplicable el foro apelado estaba impedido a resolver el caso sumariamente.

En fin, el TPI cometió el primer error imputado. Esto hace innecesario discutir los restantes.

---

[16] *Íd.*, a las págs. 41-42.
[17] *Íd.*

**IV.**

Por los fundamentos antes expuestos, revocamos la *Sentencia* apelada y devolvemos el caso ante el foro primario para la continuación de los procedimientos, conforme a lo aquí resuelto.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones